UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID VAZQUEZ,

    Plaintiff,

v.

CASE No. 8:09-CV-471-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[*] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any legal errors, the decision will be affirmed.

### I.

The plaintiff, who was thirty-six years old at the time of the administrative hearing and who has a ninth grade special education, has worked as a cook, laborer, and box folder (Tr. 186, 440). He filed a claim for

---

[*] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

supplemental security income, alleging that he became disabled due to a back injury, pinched nerve, damaged discs, and inability to read or write (Tr. 112). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine (Tr. 15). The law judge concluded that these impairments limited the plaintiff to light work with a sit/stand option and a restriction to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 16). The law judge determined that these limitations prevented the plaintiff from returning to past work (Tr. 21). However, based upon the testimony of a vocational expert, the law judge ruled that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as bench assembly worker, inserting/folding machine operator, copy machine operator, inspector/packer, and assembler/packer (Tr. 22). Accordingly, the law judge decided that the plaintiff was not disabled (id.).

The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on two grounds. Neither warrants reversal.

The plaintiff argues first that the Commissioner "erred in failing to fully and adequately develop the record with regard to the plaintiffs [sic] intellectual functioning" (Doc. 22, p. 6). The thrust of the plaintiff's contention is that the law judge did not, upon request by the plaintiff, order a consultative psychological examination to evaluate his intelligence, the results of which may show that the plaintiff meets a listing in Appendix 1 concerning organic mental disorders (id., pp. 7-8). See 20 C.F.R. Part 404, Subpart P, App. 1, listing 12.02(A)(2) and (A)(7).

The plaintiff requested a consultative mental examination to evaluate the plaintiff's intelligence and functioning (Tr. 42). The law judge expressly considered that request and denied it (Tr. 20-21). "The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an

informed decision." Ingram v. Commissioner of Social Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

Notably, the law judge directed a post-hearing consultative physical examination (Tr. 467; see Tr. 200). However, the law judge concluded that the plaintiff's school records "show[] that claimant has a Verbal IQ of 78, Performance IQ of 92, and Full Scale IQ of 83 and that provides ample data for consideration" (Tr. 20-21).

The plaintiff points out that these IQ scores were obtained when he was 16 years, 11 months (Tr. 137). The plaintiff speculates that a new IQ test might show "a significant drop in IQ" (Doc. 22, p. 10). There is no basis in the record for such speculation.

To the extent that the plaintiff speculates that a new IQ test might show that he meets, or equals, the listing for organic mental disorders in listing 12.02, that thought is meritless. There is no probative evidence that the plaintiff has had a significant head injury. Furthermore, the plaintiff does not come even remotely close to demonstrating the other requirements of listing 12.02.

The plaintiff seems to suggest that he suffered a head injury in a motor vehicle accident in November 2004 (id., p. 9). The plaintiff was a restrained front-seat passenger when the vehicle he was in was hit from the rear (Tr. 339, 354).

When the plaintiff went to the emergency room, the hospital record notes "back pain" (Tr. 354). Although there was a place on the form to record a head injury, that item was not marked (id.).

A few days later, the plaintiff went to see Dr. John E. Anthousis, a primary care physician (Tr. 357). Dr. Anthousis, at his initial evaluation, listed a diagnosis of, among other things, "close [sic] head" injury (Tr. 360). Reading the doctor's initial report, that diagnosis is surprising, since there is nothing in the report that suggests a head injury (see Tr. 357-60). Importantly, Dr. Anthousis's final report, which was prepared three months later, does not list a diagnosis of a head injury (Tr. 373).

In short, the evidence does not show that the plaintiff suffered a head injury in his motor vehicle accident, and certainly not one that would result in a significant loss in his IQ score. Accordingly, the law judge could

easily conclude that it was not necessary to order a psychological evaluation to determine whether the plaintiff had suffered an organic brain injury.

The plaintiff also asserts that his school IQ scores were not believed to be accurate (Doc. 22, p. 9). That is misleading. While the comments did say the scores were not an accurate estimate of functioning, that was because the plaintiff had an indifferent attitude toward the evaluation, tired easily, and his attention was difficult to maintain (Tr. 135). These comments indicate that the IQ scores were not believed to be accurate because they were too low.

Moreover, in order to establish an impairment meeting, or equaling, listing 12.02, the plaintiff would also have to show very severe symptoms of a mental disorder. Thus, he would need to demonstrate the criteria in either B or C subparts of listing 12.02. The B criteria requires a showing of at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation. The C criteria requires, among other

things, a medically documented history of a chronic mental disorder of at least two years' duration.

The plaintiff has not undergone any mental health treatment, and there is no evidence that the plaintiff even has a significant mental impairment, much less one that rises to the level of the B or C criteria. Consequently, there is no realistic possibility that a mental evaluation with IQ testing would demonstrate that the plaintiff meets, or equals, listing 12.02.

The plaintiff also suggests that a mental evaluation might show that the plaintiff equals listing 12.05C, which relates to mental retardation (Doc. 22, pp. 10-11). This suggestion is apparently predicated upon an impression of "[p]robable mental retardation" stated by Dr. Arthur J. Pasach (Tr. 202). Dr. Pasach was employed to conduct a consultative physical examination, and, as the Commissioner points out, he is not a mental health specialist (Doc. 23, p. 5). He clearly is not familiar with the criteria for mental retardation.

The standard definitions of mental retardation provide that it manifests before age 18, see Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002), although listing 12.05 requires onset before age 22. See 20 C.F.R. Part 404,

Subpart P, App. 1, listing 12.05. Moreover, it requires IQ scores of 70 or less. The plaintiff clearly does not meet these criteria.

The plaintiff did not show mental retardation before either age 18 or age 22. Thus, he was gainfully employed after age 22. He has told the Social Security Administration that he had no special considerations when working (Tr. 381). Moreover, he has indicated that, at one job, he was a lead worker (Tr. 106).

Further, he did not have any IQ scores at 70 or below. His lowest score was 78 (verbal), while his other scores were 92 (performance) and 83 (full scale) (Tr. 135).

Consequently, despite Dr. Pasach's spurious comment, the evidence negates a finding that the plaintiff suffers from mental retardation. There would be no justification, therefore, for obtaining a mental evaluation to see whether the plaintiff suffers from such a condition.

It is appropriate to add that, while the plaintiff has not demonstrated any mental disorder, he has shown educational limitations. The law judge not only considered those limitations (Tr. 20), but he included them in his hypothetical question to the vocational expert (Tr. 460).

The plaintiff styles his second contention as "[t]he Commissioner erred,[sic] in failing to give adequate weight to the plaintiff's treating and examining physicians, as well as to the testimony of the plaintiff himself" (Doc. 22, p. 11). The plaintiff, however, limits his argument to the assessment of Dr. Anthousis's reports. Particularly in light of the scheduling Order (Doc. 17, p. 2), any challenge beyond that is deemed abandoned.

The plaintiff contends that "the decision omits and does not evaluate the opinion of Dr. Anthousis set forth in a 'Final Evaluation' conducted on February 11, 2005" (Doc. 22, p. 11). This contention is meritless.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

On February 11, 2005, Dr. Anthousis issued a "Final Evaluation" and found the plaintiff to suffer from permanent injury to the cervical and lumbar spine (Tr. 374). Dr. Anthousis opined that the plaintiff "has suffered an 18% permanent impairment [sic] whole person involving the spinal system" (id.). He commented further that his "[p]ossibilities for future employment are greatly limited due to the forcible limitations of his condition" (id.).

The law judge did not overlook Dr. Anthousis's "Final Evaluation," but discussed the results of that report in his summary of the medical evidence (Tr. 17, 19). Notably, Dr. Anthousis only saw the plaintiff at the beginning of his recovery period, and issued the "Final Evaluation" with a number of months remaining in the twelve-month qualification period for benefits. Dr. Anthousis also submitted a one-page form dated July 5, 2005 (Tr. 283). The law judge stated he gave that information great weight (Tr. 19).

Under these circumstances, there is no basis for the plaintiff's contention that the law judge did not give proper weight to Dr. Anthousis's opinions. The plaintiff's argument consists simply of quoting some language

from Dr. Anthousis's "Final Evaluation" (Doc. 22, pp. 11-12). That language does not contain any specific functional limitations. Furthermore, the plaintiff has not attempted to demonstrate that the comments are inconsistent with the law judge's finding of the plaintiff's residual functional capacity. Accordingly, the plaintiff has not shown that the law judge erred in assessing Dr. Anthousis's reports, much less that it was reversible error.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 17th day of March, 2010.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE